First case up this afternoon is 418-0071, People v. Gilliam, for the appellant is Stephanie Puente, is that pronounced correctly? And for the appellee is Timothy Londrigan, Ms. McCormick. May it please the court, counsel. Good afternoon, I'm Stephanie Puente from the Office of the State Appellate Defender on behalf of Marcus Gilliam. Today I will be arguing Issue 1, the illegal seizure, and Issue 3, the improper sentencing factor. If time permits, I'm happy to answer any questions you have on any of their issues. Mary McCormick is not your ordinary citizen informant or eyewitness. She waited until she had been arrested for retail theft to tell Officer Patrick Patterson that she had previously driven Marcus Gilliam to Chicago to buy drugs. She provided this information expecting leniency in her pending case, and she in fact received it, she got probation. Further, the police stopped me in the car in which he rode. Under these circumstances, McCormick's information was insufficient to give rise to reasonable suspicion. As the state acknowledges, the police had never used McCormick as an informant. Therefore, they couldn't judge her veracity based on her past performance. We contend that the quality and content of the information provided to the officers, or known to the officers, also doesn't establish McCormick's veracity. And I would ask this Court to take a look at... Well, what about this as a situation? Let's assume a police car is driving down Main Street in some town, and suddenly a woman runs up to the police car and waves her hands and says, I ran out of the bank. The bank's just been robbed. That green car at the end of the street driving away, that's the guy who just robbed the bank. Are you suggesting that the officer would have to stop and say, well, give us your name and address, and have you ever given information to the police before? Or is this the kind of a situation where if you have a known person who's providing information, the police can rely on them? That situation would be like an in-person citizen tip, where there's more indicia of reliability into the information she's given, and due to the immediacy of the event that she has witnessed. So she's more credible... But you have no idea. The cop just doesn't know who she is. The cop doesn't know if a bank robbery, in fact, occurred. The cop doesn't know it could just be a prank. The cop knows nothing of those things. Yet, would you say if he went after that green car and stopped it, there would be an appropriate stop? Yes, Your Honor. I think this would be a case kind of like a... I think it's this court's decision in Shaffer and JJ, where a citizen, like an eyewitness or a victim of a crime has a higher indicia of reliability of the information she provides, because there's no ulterior motive as to why she's giving this information. Plus, if it is an employee from the bank, the police officer knows where that informant or that eyewitness works and could go follow up with her if the information turns to be false. And I think... Couldn't they follow up? Wouldn't that be bad consequences for... Informant, in this case, Ms. McCormick, if the information she had given from the police was false? Yes. I mean, she could have possibly failed. She could have possibly faced an obstruction case. But the problem with Ms. McCormick and what makes her different than a citizen, informant, or eyewitnesses of a crime is that the quality and the content of the information that she provides is unreliable. The veracity of her information wasn't established. She simply... Isn't she more reliable than just some citizen who weighs down the police, in the sense that one, the cops know who she is. Two, the cops would know where to get her if this proved to be incorrect. And three, wasn't she assisting the police so as to avoid her own legal problems with the police? Serving as a snitch? Right, so this... Well, her service as a snitch wouldn't be successful if she lied to the cops, for instance, in this instance. They could come after her and maybe, with renewed vigor, prosecute her for the crimes that she had herself committed before she decided to be a snitch. Is that possible? It's possible, but I think in this case, the issue that we have here is the officers didn't have some independent verification of her prior criminal acts with Marcus Gilliam, which is why I was trying to ask the court to consider the informant in Allen. Where Allen, the police officers had prior contacts with the informant in Allen. They were aware that he was involved in buying narcotics, and so there was a basis for them to be able to corroborate his information as well as determine whether this tip that he gave was consistent. Counsel, wasn't that the same here in terms of the ability to corroborate some of the information in terms of where she indicated they would be going, where they would be coming from, the nature of the activity that they were involved in, and then we have this information about the texting and the GPS tracking, the movements of the vehicle and all of that. Isn't all of that corroboration that was provided to the police? She gave a lot of detailed predictive information, but this is a different case than let's say this would be a different situation as in Alabama v. Wyatt. This is more like a Florida jail case in that she gave all this information, detailed information of the make, the model, the car, who was in the car, what route they were traveling, what day they would be coming back, what time, but the other thing is it's all innocent details that she controlled. She controlled all these predictive movements, and I don't think we have a case on point where how is the court or the police able to judge her veracity where all she is giving, all the information that she predicted is pretty innocent. I will get to the text message because the text message had some, this assertion had some criminality to it. It was incumbent on the police to corroborate that before they stopped the car. I would ask this court to also think of this case as kind of like in Schaefer, I mean not Schaefer, sorry, Sparks, in where it was a known informant, but there was no information as to the basis of her informant. This court held that just because the police were able to corroborate these innocent details, that wasn't enough for, there's not enough reasonable suspicion for the stop because they did not corroborate the criminal aspect of that tip. In here, that's the same situation. This is a case like Florida v. JL that even though she predicted movement, she gave predictive information, it was about her own movements in a sense, not somebody else's movements like in Alabama v. White where if the informant is able to predict another person's movements, that gives some indication that she has some inside knowledge of the suspect's criminal activities. The problem here again is just that she, we don't know what exactly was her involvement in these prior trips to Chicago. She says, yes, I drove Marcus Gilliam to Chicago, but what did she do? Did she witness him actually buying the heroin? Was she some sort of an accomplice? I think those factors are really important for this court to consider because this is not a case where let's say a murder happens. How is that relevant to a probable cause determination to what's known to the officers at the time? I understand why that might go to cross-examination of her later in her credibility, but what's that got to do, what part of that analysis has anything to do with just determination of probable cause? It goes into her veracity as to whether Officer Patterson had arrested Marcus Gilliam before based on controlled bias. He had that information and because Mary McCormick's information doesn't specifically talk about buying or selling drugs on the street, it didn't... Was there an indication that he asked her about the defendant in this case? The record isn't clear about that. There's no evidence of that, Your Honor. Miraculously, the name she brings up just happens to be one of the people that he's actually arrested before and there's no connection, right? Correct. Why isn't that relevant? That is very relevant. It's very relevant to... Of all the people she could have named... Correct. ...in this universe, she picks the one guy that he happens to actually know. You know what, I've actually busted that guy for drugs before. Hmm, I need to think about this. She agrees to put the GPS on the car. Hmm, the car's going right where she said it was going to go. Text messages, keep them advised during the process. What is there about that that makes that non-believable or non-credible probable cause? The problem is the quality of information she gave based on Officer Adrian Patterson's We just don't know how you're saying that missing link between her past involvement and her criminal liability or her criminal association with Mr. Gilliam. Because we have to think about this... Which they may sort out at some point in time. But I think it's very... But we're only talking about probable cause for the stop. Right, and I think it's very relevant to that analysis because yes, she's known, but she's never been used as an informant. Therefore, there needs to be a showing that the information she gave had some veracity. I think you're equating, and this is a fundamental problem with the whole argument, you're equating someone who's never been used as an informant before, someone who's remaining a confidential informant. So a police officer says to a judge, I have a confidential informant, doesn't reveal the name, who's provided me information on prior occasions, and this is why this information is believable now. None of that applies when you're dealing with a real person who's not a confidential informant. We say, I have John Jones, and this is what he said, and here he is. But the problem is she really wasn't there. Well, to the officer... Right, but to also... It's a question of when you're talking about probable cause, did he have probable cause based on what she said in his dealings with her and what she said on the day in question to believe, probable cause to believe that there's dope in this car? Is there enough to convict this guy? As a matter of fact, is it even a probable cause analysis? Why are there any reasonable, articulable grounds to suspect? Would that be enough? Right, and how we could raise the argument, no probable cause of that traffic violation had been committed or that there was no reasonable stop to do a territory stop of the car. Again, because of just, because of her basis of knowledge and wasn't established, how she knew about these private areas... All that applies only when it's a confidential informant, not when you're dealing with a Because if it did, going back to the very first question I asked you, the woman who's flagging down the police car, the cop doesn't know who she is, say, well, who are you? Give me your name and address. Have you ever given information to the police before? Et cetera. That would be the requirement you would assert he has to make when asking questions, wouldn't he? Right, or at least know where he could go find her, correct? I mean, if there's... Well, he certainly, this guy knew where to find McCormick, didn't he? Correct. So, going back to my question, would the cop, based upon what this unnamed woman said, running out from a bank saying, it's just been held up and there's that green car, would that be enough to make a legitimate stop? It would depend on... No, no. You've heard all the facts. The cop is driving down Main Street. A woman runs out of a bank. He doesn't know her. He's never seen her before. Half a block down, a green car is pulling away from her curb, and she says, the bank's just been held up, and the guy who held us up is in that green car. Is that enough to stop the cop? That's enough to stop the cop in that situation. Okay. He knows nothing about her. He knows nothing about her liability. He knows nothing about whether she's provided information in the past. He doesn't have her name. Can't go out and find her, necessarily, if it's an old friend. Why isn't McCormick several steps more reliable, to the extent there is a reliability issue, than this anonymous woman? Because the anonymous woman is not a snitch. She does not have... So being a snitch makes her less reliable when the cops know where she is and can prosecute her if she lies? I think, no, but the circumstances under which somebody gives that information, I think, is relevant. In your hypothetical, Your Honor, regarding the bank employee, she is... We don't even know if she's an employee. She just ran out of the bank. Right. Well, an eyewitness.  An eyewitness in the bank. It's also the spontaneity. It's also that she saw something, and there is this higher issue of credibility that she, in person, made that tip to the police. Versus here, yes, her identity is known, but her veracity still has to be established. Well, you are allowed to consider the fact that she's implicating herself in the involvement of a criminal offense. She says, I've driven him to Chicago for drugs before. Correct. So that ups her level of credibility right there, right? Right. That's one factor. That would, yes. And I think also, talking about how she implicated herself, also we need to consider just the details of what her role was. I mean, she said she drove him. Did she drive him knowingly to Chicago to buy heroin? Did she find out after the fact? I mean, it's just something to consider. Yes, she implicated herself, but does that solidify her credibility? And again, it's just one factor to consider. When you put all the factors together, there's just not enough to find her to be reliable. And the cooperation that the police did, it was all innocent details. They did not corroborate the fact that she said that Mr. Gilliam had 10 grams of heroin. If your honors have no more questions, I'll move to the next issue. It was also error for the trial court to consider compensation as an aggravating sentencing factor, where it's a factor inherent in the offense, such as this, which is possession with intent to deliver. The state here presented evidence of Gilliam's expected compensation through Officer Patterson's testimony. And under Section 5-5-3.28, which talks about the sentencing factors, the aggravating sentencing factors, receiving compensation for committing an offense is only applicable when the defendant has received payments to commit the crime. Counsel, was this issue raised in a post-trial motion? No, your honor. So you agree that it's forfeited? It's forfeited, but it could be reached on either plain error or ineffective assistance of counsel grounds. And so the state failed to present evidence that Gilliam received money to sell the drugs, and there's no evidence that he actually received payment for the drugs in this case to be considered proceeds. And in this case, the court specifically said that it specifically indicated that it considered aggravation, compensation as an aggravating sentence. Because the judge didn't make any emphatic statements, or we don't know really how the consideration of the compensation factor affected the sentence, we would ask this court to remand for a new sentencing hearing, since the trial court shouldn't have considered the compensation factor inherent in the offense. If your honors have no more questions, I would reserve my memory. We've got five minutes, and we're about to go no matter what. Okay. Thank you, your honor. Thank you, counsel. Mr. Londrigan? Good afternoon, your honors. May it please the court? Counsel. Counsel. The issue before the court this afternoon is the justification for the police making a Terry stop, which is not the same thing as the court has recently pointed out as probable cause for making an arrest. This is a much lower standard that the police must have in order to simply make a brief investigatory stop of an individual who they feel may be engaged in a criminal offense. As Terry stop is justified, the police can point to articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. And the state's position is that the facts known to the arresting officers were overwhelming in this instance. You know, it's hard to justify or hard to really have many more facts in support of the intrusion that was made here. I'll just briefly go over them. McCormick was the direct eyewitness to the offense. She explained the basis of her knowledge. This is not something akin to a telephone call from an unknown caller who doesn't explain how the information was obtained. McCormick implicated herself in the offense. She herself was, you know, participating in the offense. That's how she knows it. So she's opening herself up for potential charges there. Her identity was known. Her phone number, her address were known by the police. It's been suggested that perhaps she had reason or motivation to lie, but the state doesn't understand the basis for that argument. If she comes forth and gives the police false information, that's only going to aggravate them. That's not going to placate them or give them some reason to suggest that the offense by which she's charged should be reduced or that she should be given credit for helping the police. If she's going to send them on a wild goose chase, she's certainly not going to get any benefit from that. So she has no benefit or no reason to lie. In fact, she has a great deal of reason to be truthful. She also provided predictive information. She mentioned a gentleman who was already known to the police officer as having been recently arrested for engaging in heroin-related activity. Everything she said, she followed through with. You know, this is what we're going to do, where we're going to go, where we're going to be. You've got a GPS device on the car. She's texting in addition to that. I mean, what more information could you hope for? I believe what the defendant is asserting is that because, well, I think the defendant is suggesting, and I don't mean to put any words in their mouth here, but it seems that they're saying the police had an obligation to see that they were justified in relying on her information. So apparently they can't use her the first time. They have to first see if she gives credible information which leads to an arrest, and if that's truthful, then they can rely upon her the second time. There is no such rule in Illinois law. There should not be such a rule in Illinois law. The rules are pretty clear. What must be obtained by the arresting officer, or rather, investigating officer, and that burden is fairly low. Reasonable, articulable facts known to the officer at the time of the arrest. I would say in this instance they're overwhelmed. The other issue addressed in oral argument was one dealing with the court's comment about compensation. First of all, this issue is waived. It's waived because it wasn't objected to. Forfeited. Forfeited. Sorry, Judge. Forfeited. Because it was not brought to the attention of the sentencing court, and it was not brought at the time that the comment was made at the sentencing hearing, and it was not brought to the attention of the sentencing court in a post-trial motion. And the reason that we have the waiver rule is just for this kind of situation. If it had been brought to the attention of the trial court, the trial court would have had an opportunity to explain what he meant by making that comment. Are we able to determine from this record what extent the trial court relied on that factor? I think so, Judge. I think a fair reading of the court's comments as the court goes through the basis as to why it's sentencing this defendant gives pretty clear evidence that the compensation was not significant if the court really considered it at all. I appreciate the fact that the court mentioned it as an aggravating factor, but it mentioned it once. It did not go into detail. It did so after it was discussing Officer Peterson's activities or knowledge of the defendant's activities. And I think what the court meant to say is that this type of activity is particularly insulting to the court because of the harm it's doing to society. And the harm to society is a reasonable aggravating factor. In fact, compensation itself can be considered for reasons other than, you know, making a profit off of it. The seriousness of the offense is a deterrent to others who may be similarly thinking of engaging in this activity. My brief contains several instances in which the court has determined that it is proper to give some consideration to the fact that this is a money-making operation. So I don't think that the court considered that at all, and if it did, it did so only slightly, and I think it did so in response to the testimony of Officer Peterson. And if there are no further questions from the bench, thank you. I see that. Thank you, Counsel. Ms. Fuente, any rebuttal? Yes, please. Go ahead. Your Honors, we maintain that the information that Mary McCormick gave was not reliable enough, and we could look at even the record where it suggests that the deputy told the officers that they needed to get an independent basis of probable cause to stop the car. If they thought they had enough, did he need to tell that to the officers? Second, we're not saying that there has to be a higher standard to determine her reliability. We just consider the nature and circumstances of the information available to the officers at that time. Again, there was no evidence in the record that suggests that the officers knew that Mary McCormick had been involved in the drug trade or had been arrested for the drug trade as it happened in Allen, with the informant in Allen. As to the sentencing issue, it is not forfeited, and I mean, it is forfeited, but even if it is, it could be addressed under first prompt later. As we argued, the evidence is closely balanced. How is the evidence closely balanced in this case, given that the defendant was out on bond when he committed this crime? Right, and he was out on bond, but he hadn't had any offense or even a drug offense in the case of his mother. He has no history of crimes of violence, and even though he was on bond, that would have been considered once the case in Peoria was adjudicated. As to the state's argument as to the nature and circumstances, whether the compensation was considered as the nature and circumstances of the offense, we argue that unlike Midd and Rios, there was no evidence presented that this was an ongoing criminal enterprise. All we heard from Officer Patterson was that he had arrested Mr. Gilliam due to several undercover buys, and that was just to talk about the case that he was on bond when he committed this offense. If your honors have no additional questions, we would ask for the reasons stated today in our briefs to reverse the denial of a motion to quash the arrest and suppress evidence, and reverse Gilliam's conviction, or alternatively remand for a new trial pursuant to the second issue regarding the expert, or in the alternative, remand for a new sentencing hearing, because it's unclear how much weight was given to the fact of compensation. Thank you, your honors. Thank you, counsel. We'll take this matter under advisement and be in recess for a few moments.